Daniel J.
The xxote upon which the suit was brought was dated at Washington axxd made payable at a baixking house in that city; and we mxxst look to the law of that place for the rule by which to ascertain the true xxature of the contract entex’ed into by the exxdorsei'. ISTo proof of that law having been given on the trial the first question presenting itself is, whether said law is one of which the Circuit court was hound to take notice jixdicially.
As a general rule no court takes judicial notice of a *287 foreign law; and this rule has very properly, I think, been recognized as determining the question of how far the courts of any one of the states formerly composing the United States were bound to take notice of the laws of any other one of those states. The relation of the United States to each other in regard to all matters not surrendered to the general government by the constitution, were those of foreign states in close friendship, each being sovereign and independent; and the courts have very generally held that, therefore the law's of one state were to be proved in the courts of another only as other foreign laws. 1 Greenl. on Ev. § 489.
In section 490 of the same work, however, the author states that, because of the reciprocal relations between the national government and the several states, the courts of the United States take judicial notice of all the public laws of the respective states, whenever they are called upon to consider and apply them; and in like manner the courts of the several states take judicial notice of all public acts of Congress, including those which relate exclusively to the District of Columbia, without any formal proof. I have been unable to find any case in which the latter member of the foregoing proposition, so far as it relates to the District of Columbia, has been, in terms judicially announced by the supreme court of any one of the states, though it seems to me that it must be as the author has stated it.
By the 8th section of the 1st article of the constitution of the United States, the Congress was clothed with exclusive legislation over the District which should become the seat of the government of the United States; and by the 6th article it is declared that the constitution and the laws of the United States made in pursuance thereof, shall be the supreme law of the land, and the judges in every state shall be bound thereby; anything in the constitution or laws of any state to the contrary notwith *288 standing. The District of Columbia having become, by the cession of Maryland and Virginia and the acceptance of Congress, the seat of the government fof the United States, it is difficult to conceive on what grounds it is to he said that a public act of Congress in relation to said district, passed in the exercise of its exclusive legislation over said district, is not a law of which the courts of the states were bound, to take notice, judicially. It is by comity only that contracts made in one state are enforced by the courts of another state according to the laws of the former; and no state is bound to enforce a contract made in another state which is contrary to its general policy and laws. But it is obvious that a state court in enforcing a contract made in the District of Columbia according to the lex loci contractus cannot proceed upon any notion of comity; in as much as if it did it .would have a right to disregard such law if found in conflict with the law of the state; and this right it could not exercise without violating the constitution, the lex lod contractus, in such case, being a law of Congress, which, if to be noticed at all, is to be observed as a supreme law, and' binding upon the court though it should be in conflict with the laws of the state. In other words, if in enforcing a contract made in the District of Columbia a state court is bound to notice, at all, the laws of the place, regulating such contracts in the District of Columbia, it must treat them as it does any other public acts of Congress passed in pursuance of the constitution, which it is required to administer, to wit, as supreme public laws of the land—laws which the court is presumed to know and is bound to notice without requiring them to be first proved.
The act of Congress to which reference is had above, is an act passed the 21th February, 1801, by which it is declared that the laws of the State of Virginia as they now exist, shall be and continue in force in that part of' *289 the District of Columbia which was ceded by the said states to the United States, and by them accepted for the permanent seat of government; and that the laws of the State of Maryland as they now exist, shall be and continue in force in that part of said district which was ceded by that State to the United States, and by them accepted as aforesaid. Brightly’s Digest 251. At the time of the passage of this act the statute 3 and 4 Anne ch. 9, in relation to promissory notes, was, as is conceded, and as is seen from the reports of several decisions of the Supreme court of Maryland, cited 'at the bar, a law of that State; and by that statute, all notes in writing payable to any person or persons, his, her, or their order, are assignable or indomable over in the same manner as inland bills of exchange are or may be; and all persons to whom such notes are indorsed or assigned may have their actions thereon against the maker or any of the persons that indorsed the same in like manner as in cases of inland bills of exchange. By this law, thus made the law of the city of Washington, the indorsers,.if duly protested and notified by protest, were liable on the note on which the suit was brought, in like manner as they would have been on a regularly protested inland bill of exchange ; and by the 10th and 11th sections of ch. 144, Code 1849, an action of debt is given when any note or ■writing by which there is a promise, or undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby or his agent. And it is further declared that upon any such note which on its face is payable at a particular bank or a particular office thereof for discount and deposit, or the place of business of a savings institution or savings bank, aud upon any bill of exchange, whether such note or bill be payable in or out of this State, if the same be protested, an action of debt may be maintained and judgment given jointly against *290 all liable by virtue thereof, whether drawers, indorsers or acceptors, or against one or any intermediate number of them, for the principal and charges of protest, with interest thereon from the date of such protest.
If 'the steps in relation to the protest and notice have been regular there would thus, as I conceive be nothing wanting to maintain the action. The protest is in regular form, and the only question remaining to be considered is as to the sufficiency of the notice.
None of the cases cited by counsel, comprehend in their decisions all the points in respect to notice arising out of the proofs in this ,• though several of them bear a close resemblance to it in some important features. Thus in the case of P. Chouteau v. Daniel Webster, 6 Metc. R. 1, in which the notice was held sufficient to charge the indorser, when the note on which the suit was brought, which was payable at New York, fell due, the indorser, Mr. W. was at Washington attending to his duties at a session of Congress, as a senator from Massachusetts. IBs general domicil and place of business was in Boston, where he at all times had an agent who had the charge and management of his business affairs in his absence; though the holder of the note had no notice that he had such agent, nor had the indorser requested that notice should be sent to him at Boston. Notice of the non-payment of the note was seasonably put into the post office at New York, directed to the indorser at Washington, where letters addressed by mail to members of the senate during the session of Congress, were taken from the post office by officers charged with that duty and delivered to the members in their places when the senate was actually in session, and on other days were delivered by those officers at the members’ lodgings. In that case, as has been seen, the senate was in session, and Mr. Webster was in Washington at the time the notice was sent. In this case Congress had adjourned *291 and the indorser had left Washington, a few days after the adjournment and some ten or fifteen days before the note was protested ; and it was proved that it was his general habit to leave Washington immediately after the ■adjournment of Congress, and not return until the commencement of the next session. So in the case of Graham v. Sangston, 1 Maryland R. 59, the indorser at the time of the maturity of the bill was a member of the general assembly of Maryland, then in session, and boarded at a hotel in Annapolis, the seat of government; and the notary gave notice by leaving the notice at the room of the indorser in the hotel; but whether the indorser was in Annapolis on the day that the notice was given did not appear; nor was there any proof in respect to the general domicil of the indorser. The notice was ■decided to be sufficient.
In the last case the fair inference from the facts is, that the indorser must in fact have received the notice— the notice being left at his lodgings where he was then staying in attendance upon the legislature. The case would apply here if in this case Congress had been in session at the time the notice was left at the house of Eayly in Washington.
The residence of a member of Congress at Washington during the session of Congress is a matter required by law; and so long as the session continues it is but just and reasonable to infer that the .member is where the discharge of most important public duties demands of him that he should be. It was on such grounds, mainly, that the court in Chouteau v. Webster, justified the notice to the indorser in that case.
Strong, however, as are the reasons on which this case was decided, it is opposed by the ease of Walker v. Tunstall, 3 How. Miss. R. 259. In that case the indorser, Robert I. Walker, was a member of the United States senate; the senate was in session; and he was proved to *292 have been in Washington attending to his duties of senator at the time of the protest; notice of which ivas sent in good time by mail directed to him at Washington. The proofs in this cause tended to show that Mr. Walker had a general domicil in the State of Mississippi; and in passing upon certain instructions given in the court below, the supreme court of Mississippi held in such a state of facts, that when the indorser has a residence in the state which he represents the notice should be sent to such residence; and if his residence is not knowm due diligence should be used to ascertain the same; and that notice sent to Washington city is not sufficient. The cause being remanded for a new trial, that trial was had, and a verdict and judgment obtained in the court below in favor of the indorser. The plaintiff in the action then appealed, and we have a report of the case on its second hearing in the Supreme court of the state in 2 Smeedes & Marsh. R. 638. It now appearing from the additional facts proved on the second trial, that the indorser had no general domicil, or knowm place of residence or business, at the time of the protest, the court held that notice sent to him at Washington city was sufficient to fix his liability. The two decisions of the court are not in conflict; and their joint result is to declare that notice sent to a member of Congress who has no known place of residence, is good if directed to him at Washington, whilst Congress is in session, and he is there engaged in the discharge of his official duties ; but that such notice is not sufficient if he has a known place of residence, except upon a failure of the notary to ascertain the residence after having used due diligence to ascertain it.
It seems to me, that the rule declared in Chouteau v. Webster is the more reasonable one, but, seeing, that in the opinion of learned and able judges, it is deemed too broad already, I do not feel disposed to extend it still *293 further than any ease has yet gone, and make it embrace a notice directed to a member of Congress at Washington after the adjournment of Congress, and after thé member had in fact left the city.' The presumptions which uphold the notice during the session of Congress seem to me to have nothing to sustain or justify them after the body has adjourned. The presumption is then the other way. It is then but reasonable to suppose that the members have left the city and gone to their respective homes; and it is difficult to believe that any notary in Washington could remain for many days ignorant of the adjournment of Congress. The indorser had been, at the time of the protest, for more than ten years a member of Congress; punctual in his habit of. attending Congress during its sessions, and regular in his habit of leaving Washington immediately after the adjournment and of not returning until the commencement of the ensuing session. Yery little diligence used by the notary in enquiring of the citizens of Washington, would (we must believe) have acquainted him with the fact, if he did not already know it, that the indorser was a member of Congress from Virginia, having his general domicil in that State, and residing in Washington only during the- sessions of Congress; that Congress had adjourned and that he had as was his habit, left the city. It does not appear that any enquiry of the kind was made. The fact that the note was dated at Washington it is well settled does not dispense with due diligence to ascertain the residence of the indorser in cases where, if the note were dated elsewhere sueh diligence should have been used. Upon a view of all the facts I do not think that the notice was sufficient; and the court it seems to me erred in giving the instructions complained of, and in refusing to set aside the verdict and grant a new trial. It seems to me that the judgment should be reversed, *294 the verdict set aside, and the case remanded for a new trial.
Allen P. and Bobertson J. concurred in the opinion of Daniel J.
Moncube . J. dissented. He thought the notice sufficient.
Judgment reversed.

Note try reporter.

Lee, J. did not set in this or any of the subsequent civil cases, reported in this volume.